STATE OF NORTH CAROLINA v. ROGER DALE DIXON

No. 8527SC682

(Filed 19 November 1985)

**Criminal Law § 75.10— confession—waiver of rights valid**

     There was no error in the admission of defendant's custodial statement in a prosecution for rape where defendant had an I.Q. of 66 and a memory problem; had been in jail for 12 hours and questioned twice when he gave the statement; had been detained by the victim's son-in-law with a baseball bat; had been fully advised of his rights on two occasions; had indicated on each oc-

casion that he understood his rights; had exercised his right to remain silent on the first occasion; and had given a statement on the second without threats, promises, coercion, badgering or preliminary questions from the police.

APPEAL by defendant from *Saunders, Chase B., Judge.* Judgment entered 24 January 1985 in Superior Court, GASTON County. Heard in the Court of Appeals 31 October 1985.

Defendant was charged in a proper bill of indictment with rape. At trial the State offered evidence that on 16 September 1984, the victim, a 69-year-old lady who used a cane or wheelchair to get around, was accosted and raped in her home by a person who she identified as the "crippled Dixon boy." She later specifically identified the defendant as the person who raped her. After the assault the victim called her daughter and son-in-law. The son-in-law discovered the defendant a couple of blocks from the victim's home and held him there with a baseball bat until the police came. The State also presented evidence from the physician who examined the victim. He testified that his findings were consistent with the victim's version of what had happened.

The defendant was arrested on 16 September 1984 and on 17 September 1984 he gave a statement. The defendant made a timely motion to suppress this statement. Following a *voir dire* hearing, the trial court made findings of fact and conclusions of law and admitted the statement into evidence. In the statement the defendant stated that he went to the victim's house to get a glass of water. Defendant stated that the victim gave him a glass of water and that she made sexual advances to him but that he did not rape nor attempt to rape her.

Defendant testified in his own defense. In his testimony he stated, consistent with the statement he had earlier given the police, that he went to the victim's home to get a glass of water and that the victim then initiated sexual contact with him. Defendant also presented evidence from members of his family that he had a good character and reputation in his community prior to the alleged incident. The family members also testified that the defendant had been involved in an automobile accident which had left him crippled and with a memory deficiency.

Defendant was convicted of second degree rape. From a judgment sentencing him to thirty-five years imprisonment, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Newton G. Pritchett, Jr., for the State.*

*Acting Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Robin E. Hudson, for defendant appellant.*

ARNOLD, Judge.

The sole issue presented for review is whether the court erred in admitting the defendant's custodial statement into evidence. Defendant argues that while the procedural formalities were followed in obtaining a waiver of rights, this waiver should be held invalid because it was not knowingly, intelligently and voluntarily made. Defendant bases this contention upon the fact that he had an I.Q. of 66, and had a memory problem. That the police knew this but only took five minutes explaining the rights form. He also cites the fact that he had been in jail over 12 hours, and had been questioned twice when he gave the statement. Defendant further cites the manner in which he was detained by the victim's son-in-law.

Following a *voir dire* hearing on defendant's motion to suppress the court made the following findings of fact and conclusions of law before admitting the defendant's statement.

(1) On the 16th of September, 1984, the defendant was arrested as a suspect in a breaking and entering case. That the arrest took place in the context of allegations of a rape.

(2) That on this occasion, the 16th of September, 1984, the defendant was read his Miranda rights at 7:25 P.M. when he was brought to the police department; and he stated to the officer who gave him his rights that he didn't want to talk to him. That he was then placed in custody.

(3) The defendant on the 17th of September, 1984, conversed with Chief Sprinkles at 11:07 A.M. On this occasion, Chief Sprinkles took him from his cell to an interrogation room and at that time gave him the following rights—at the time the rights were given, no odor of alcohol was noticed about the person of the defendant. The defendant was asked questions which he responded to, and his answers were understandable. That the officer went over his rights from 11:07

A.M. until Twelve A.M. and inquired and made the following statements to him: The officer asked whether or not—explained to him that he had the right to remain silent and asked if that right was understood, to which the defendant responded, "Yes;" and the officer asked—stated that, "Anything you say can and will be used against you in court," and asked if that was understood; and the defendant responded, "Yes;" and the officer stated to the defendant that he had the right to talk to an attorney for advice before he asked—"We ask you any questions and to have him with you during questioning," and he asked if he understood that; and the defendant said, "Yes." That the defendant in open court stated that Chief Sprinkles told him that he didn't have to say anything until he got a lawyer. That Chief Sprinkles further stated that, "If you cannot afford an attorney, one will be appointed for you before any questioning if you wish," and asked if he understood that; and the defendant stated, "Yes." That, "If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer." He inquired as to whether or not that was understood; and he responded, "Yes;" and the next question asked was, "Do you understand each of these rights I have just explained to you?" The answer provided was, "Yes;" and, "Having these rights in mind, are you still willing to talk with me and answer questions that I may ask you in reference to a rape case that happened on the 16th—on Sunday, the 16th, 1984, in Lowell?" and the answer to that question was, "Yes." There is a provision on this waiver of rights form, which is incorporated by reference into the Court's Order and identified as State's Exhibit 1 for voir dire purposes, a language which begins with the title, "Waiver of Rights," parens, "To be read by person being interviewed," parens. It was determined by Chief Sprinkles that the defendant had a seventh grade education, and the defendant stated that he could read a little. That the police officer did read the following statement to the defendant: "I have read this statement of my rights, and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to

State v. Dixon

me, and no pressure or coercion of any kind has been used against me."

(4) The officer stated and the Court finds as a fact that that portion of the rights form was given to the defendant. The following language appears in the form, "With this paragraph in mind, are you still willing to talk with me and answer questions I might ask you knowing you have the right to have a lawyer with you?" The Court finds that the defendant understood that and answered, "Yes." "Are you willing to talk with me without a lawyer present at this time knowing full well that you have the right to have one with you at this time?" The answer to that was, "Yes;" and this waiver of rights form was signed by the defendant and signed by Chief Sprinkles and was noted at a concluding time of 11:12 A.M. for the purpose of giving the rights.

(5) That subsequently his statement was made some forty-five minutes—that the room in which the interview took place was a room in the police department and that room had tables and chairs, and the total length of the interview was some forty-five minutes. That at the time the statement was made the defendant had been in custody for some twelve hours.

(6) Further, that the information concerning the address of the defendant was noted on the form as being 611 Greer Street, Lowell, North Carolina; date of birth: March 1, 1954.

(7) The Court in this matter ultimately finds that no promises or threats were made or pressure or coercion of any kind used against the defendant in securing a statement from him. That he did not request an attorney. That he freely, voluntarily, and understandingly waived his rights and made a statement to the police.

AND THE COURT CONCLUDES AS A MATTER OF LAW based upon the totality of the circumstances—determines:

(1) That the Court has proved—that the State has proved by the greater weight of the evidence that the statement given was freely, voluntarily, and understandingly given—not made under threat or promise or offers of award or inducements.

(2) The defendant was in full understanding of his constitutional rights under the Miranda case and all of his other rights, and he waived each of those rights individually and made a statement to the police officers.

(3) The Court concludes as a matter of law that none of the constitutional rights, either Federal or State, of the defendant were violated by his arrest, detention, interrogation, or confession and accordingly concludes that the State is entitled to offer the statement into evidence and SO ORDERS, DENYING THE MOTION TO SUPPRESS.

The trial court's findings of fact are supported by the evidence. Facts found by the trial court are conclusive on the appellate courts when they are supported by the evidence. However, the conclusions drawn from the facts are reviewable. *State v. Pruitt*, 286 N.C. 442, 212 S.E. 2d 92 (1975).

In the case *sub judice* the record clearly shows that the technical procedural safeguards set forth in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), were followed. Thus, the question becomes whether looking at the totality of the circumstances the defendant knowingly, voluntarily and intelligently waived his right to remain silent. *See Fare v. Michael C.*, 442 U.S. 707, 61 L.Ed. 2d 197, 99 S.Ct. 2560, *reh. denied*, 444 U.S. 887, 62 L.Ed. 2d 121, 100 S.Ct. 168 (1979).

The defendant's limited mental ability is an important factor to be considered in determining whether the statement was voluntary. However, this factor does not render the statement inadmissible if it was voluntarily and understandably made. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975), *death sentence vacated*, 428 U.S. 908, 49 L.Ed. 2d 1213, 96 S.Ct. 3215 (1976). In the present case the defendant had been fully advised of his rights on two occasions. The defendant indicated on each occasion that he understood these rights. In fact on the first occasion defendant exercised his right to remain silent and the police honored his request. On 17 September he gave the police a statement without any threats, promises or coercion from the police. This statement was given without any badgering or preliminary question from the police. Considering all of these factors we find that the evidence showed that defendant knowingly and voluntari-

ly waived his right to remain silent. Therefore, we find the trial court properly admitted defendant's statement.

No error.

Judges WELLS and PARKER concur.